UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PAUL SIMMONS,

        Plaintiff,                     Case No. 1:25-cv-513

v.                                       Honorable Maarten Vermaat

UNKNOWN SUTTEN et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Zamarron. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Spohn, Sutten, and Palmer.

Plaintiff's personal capacity First Amendment retaliation claims against Defendants Spohn, Sutten, and Palmer remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred there. Plaintiff sues the following DRF staff in their

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

official and personal capacities: Lieutenant Unknown Palmer, Sergeant Unknown Spohn, and Correctional Officers Unknown Sutten and Unknown Zamarron. (Compl., ECF No. 1, PageID.1.)

Plaintiff alleges that on November 17, 2024, he filed a Prison Rape Elimination Act (PREA) grievance against Defendant Zamarron. (*Id.*, PageID.2.) According to Plaintiff, Defendant Zamarron made "sexually fueled advances towards Plaintiff's <u>naked body being sexy</u> during a strip search." (*Id.* (emphasis in original).) Plaintiff categorizes this advance "as a prelude to a physical sexual encounter" in the "prison atmosphere." (*Id.*)

Late that day, inmate Morgan overheard Defendant Spohn telling non-party Unit Officer Heeke: "Simmons is whining that Za[m]arron said he was sexy. He's an asshole and if he files a PREA grievance on Za[m]arron or try and go over my head tell everyone I said ticket his ass every time he writes a grievance." (*Id.*, PageID.3.) "Plaintiff went on to file several grievances." (*Id.*)

On February 2, 2025, Defendant Palmer issued a misconduct ticket charging Plaintiff with "interference with the administration of rules." (*Id.*) The misconduct ticket was based upon the fact that Plaintiff had filed a PREA grievance against Defendant Zamarron. (*Id.*) Within the ticket, Defendant Palmer asserted that there was no evidence to support Plaintiff's allegations against Defendant Zamarron, and that he had written the grievance "to bring disciplinary actions on Officer Zamarron." (*Id.*)

Plaintiff alleges that prior to receiving the misconduct ticket, non-party Inspector Bowne issued a report on January 22, 2025, finding that Plaintiff's PREA grievance against Defendant Zamarron was insufficient. (*Id.*, PageID.4.) Plaintiff avers further that with respect to the misconduct ticket issued by Defendant Palmer, he "never received an administrative hearing." (*Id.*) Instead, the report "mysteriously drifted into the abyss to cover up Defendants['] misconduct." (*Id.*)

4

Plaintiff goes on to allege that Defendant Sutten issued him a misconduct ticket for insolence/disobeying a direct order. (*Id.*) Plaintiff has attached a copy of this ticket to his complaint. (ECF No. 1-6.) The ticket was issued on February 2, 2025. (*Id.*, PageID.16.) In the ticket, Defendant Sutten averred that Plaintiff disobeyed an order to put on his "state blues," and that while being cuffed, Plaintiff said, "It does not matter you two will also be in my grievances." (*Id.*) Plaintiff contends that he made that statement because he was "simply notifying Defendant Sutten of his intent to file a grievance [on] him." (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that a hearing officer found him not guilty of disobeying a direct order, but found him guilty of insolence. (*Id.*, PageID.5.) According to Plaintiff, the hearing officer based that decision on a finding that "'[i]t was logical to believe that the writer of the misconduct would feel alarmed or harassed after being told "It doesn't matter you two will be in my grievance.'" (*Id.*)

Based upon the foregoing, Plaintiff indicates that he is asserting retaliation and sexual abuse claims. (*Id.*, PageID.8.) Plaintiff seeks compensatory and punitive damages. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

5

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.  **Official Capacity Claims**

As noted *supra*, Plaintiff sues Defendants in both their official and personal capacities. (Compl., ECF No. 1, PageID.1.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment

immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks only damages. (Compl., ECF No. 1, PageID.8.) Plaintiff, however, cannot pursue damages claims against Defendants in their official capacities for the reasons set forth above. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Accordingly, the Court will dismiss Plaintiff's official capacity claims for damages against Defendants because relief cannot be granted on such claims.

**B.    Personal Capacity Claims**

**1.    First Amendment Retaliation**

Plaintiff alleges that Defendants Spohn, Sutten, and Palmer engaged in unlawful retaliation against Plaintiff.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff contends that he filed a PREA complaint regarding Defendant Zamarron, and that he also filed other grievances. Plaintiff also suggests that he told Defendant Sutten of his intention to file a grievance against him. At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### b.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff alleges that on November 17, 2024, Defendant Spohn told non-party Unit Officer Heeke: "Simmons is whining that Za[m]arron said he was sexy. He's an asshole and if he files a PREA grievance on Za[m]arron or try and go over my head tell everyone I said ticket his ass every time he writes a grievance." (Compl., ECF No. 1, PageID.3.) On February 2, 2025,

8

Defendant Palmer charged Plaintiff with interference with the administration of rules premised upon non-party Inspector Bowne's report that Plaintiff's PREA grievance against Defendant Zamarron was insufficient. (*Id.*, PageID.3, 4.) Finally, on February 2, 2025, Defendant Sutten issued Plaintiff a misconduct for insolence/disobeying a direct order after Plaintiff refused to put on his "state blues" and also said, "It does not matter you two will also be in my grievances." (*Id.*, PageID.4, 5; ECF No. 1-6, PageID.16.)

Taking Plaintiff's allegations as true, as the Court must at this stage, Plaintiff has alleged sufficient facts to suggest that the actions taken by Defendants Spohn, Sutten, and Palmer were motivated, at least in part, by Plaintiff's PREA grievance against Defendant Zamarron and his statement of intent to file a grievance against Defendant Sutten. As a result, Plaintiff's personal capacity First Amendment retaliation claims against Defendants Spohn, Sutten, and Palmer may not be dismissed on initial review.

### 2.    Eighth Amendment Sexual Abuse

Plaintiff alleges that on November 17, 2024, Defendant Zamarron made "sexually fueled advances towards Plaintiff's <u>naked body being sexy</u> during a strip search." (Compl., ECF No. 1, PageID.2 (emphasis in original).)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief"

incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, considering the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

In another example, the Sixth Circuit recently found an Eighth Amendment violation when a prison official sexually harassed a male prisoner by repeatedly demanding that the inmate expose his penis. *See Rouser v. Hofbauer*, No. 24-1658, 2025 WL 1013470, at *2 (6th Cir. Mar. 27, 2025). In *Rouser*, after the inmate refused to comply with the officer's sexual demand, the officer retaliated by falsifying a misconduct ticket, resulting in a misconduct hearing and the inmate's placement in segregation. *See id.* The Sixth Circuit concluded that these facts, taken together, were "sufficiently serious to implicate the Eighth Amendment." *Id.*

Here, Plaintiff's complaint is devoid of any allegations that would allow the Court to infer that Defendant Zamarron sexually harassed Plaintiff in a manner akin to the conduct at issue in *Rafferty* and *Rouser*. Plaintiff does not suggest that Defendant Zamarron made repeated sexual comments to him, nor does he allege any facts suggesting that Defendant Zamarron retaliated against Plaintiff in any way. While the Court certainly does not condone the type of comment Plaintiff alleges was made by Defendant Zamarron, Defendant Zamarron's alleged behavior does not rise to the level of an Eighth Amendment violation. Plaintiff's Eighth Amendment claim against Defendant Zamarron will, therefore, be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.)

Having conducted the review required by the PLRA, the Court determines that Defendant Zamarron will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's official capacity claims against Defendants Spohn, Sutten, and Palmer for failure to state a claim.

Plaintiff's personal capacity First Amendment retaliation claims against Defendants Spohn, Sutten, and Palmer remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 5, 2025                              /s/ *Maarten Vermaat*
                                                   Maarten Vermaat
                                                   United States Magistrate Judge